Collins *vs.* Everett.

No. 30.—ROBERT COLLINS, plaintiff in error, *vs.* JAMES A. EVER-
ETT, defendant in error.

[1.] A promissory note is made by A, payable to B, *or order*, and indorsed at
the time of its execution by C—*Held*, that according to the Common Law,
the legal import of the note is, to make C liable as second indorser.

[2.] *Held*, that parol testimony is not admissible in a suit by B, against C, to
show that C agreed to be liable to the plaintiff as surety, or original promissor.

[3.] *Held*, also, that in a suit upon such a note, by B against C,—C is liable to
B as a surety, under the Act of December, 1826.

Assumpsit. From Bibb Superior Court. Tried before Judge
FLOYD, November Term, 1847.

The action was brought by Everett against Collins, in the Court
below, upon the indorsement of Collins upon the following note :
" $4000.                         " Macon, Jan. 1, 1842.
" Twelve months after date, I promise to pay James A. Ever-
" ett, *or order*, four thousand dollars, for value received, with in-
" terest from date."              (signed)      " J. G. MOORE."
(Indorsed) " ROBERT COLLINS."

The declaration contained three counts, the first charging Col-
lins as security under the Act of 1826; the second charging him
as a guarantor; and the third as a joint maker.

Collins pleaded *non assumpsit*, and several other pleas unne-
cessary here to recite.

Upon the trial below, when the counsel for Everett offered the note
in evidence, it was objected, on the part of Collins, on the ground
that the note did not sustain either count, and urged that parol
testimony was not admissible to vary its legal import; whereup-
on the Court below admitted the note in evidence to the Jury, un-
der the *first* and *third* counts. The second count was stricken
out of the record.

Parol testimony was then offered and admitted on the part of
Everett, which proved the admissions of Collins, that the note was
given by Moore for bank stock bought by Moore of Everett. The
inference from the testimony was, that the note was indorsed by
Collins before it was delivered to Everett.

The testimony having closed, the Court instructed the Jury

that if Collins indorsed the note before it was delivered to Everett, without any further explanation of his liability, they should find for Everett, for the contract was not complete until the note was delivered, and Collins might be treated as a joint maker, or as security, and the writing of his name upon the back of the note, as effectually bound as if written in the face of it.   That if Collins was interested in the original consideration, then he was liable as a joint maker; if not, then as security.   But if the Jury believed from the evidence that Collins did not write his name on the back of the note until after the delivery of it to Everett, then they should find for Collins.

To which admission of parol testimony, and the charge of the Court, the counsel for Collins excepted.

Upon these exceptions the error was assigned.

COLE and RUTHERFORD, for the plaintiff in error.

HUNTER and GRESHAM, for defendant in error.

ARGUMENT OF MR. RUTHERFORD.—The action below, was by Everett, payee, vs. Collins, sole and blank indorser on the note, payable to "order." (See the copy in History of case.)

The declaration went to the jury with two counts—one charging as joint maker, and one as surety, (security) under our act of 1826. The guarantor count stricken out, and not excepted to.

The errors assigned will appear in their order.

PRELIMINARY REMARK.—There is no count, except upon the note, as an instrument; both rely upon its legal effect.

The question is not here raised, whether the note is evidence under a special count on the consideration.

Before Stat. Anne, (3 and 4,) Ld. Holt and others denied that an action lay at C. L. on a note, even between original parties, ( Ch. B. 549.   2 Ld. Ray. 758,) though this was then allowed by the custom of merchants, both as to bills and notes.   Ib.

It is certain that before the Stat. Anne, a note was not transferrable, even by indorsement.   Ch. B. 549.   9 B. & C. 215. Hence, the passage of that Stat. Ch. B. 549.   Story P. N. §6.

The payee is in law "a party" to a note, without his name being actually on the note.   Story P. N. §4, calls maker and payee

the two original parties. This must be so; it requires two to bargain; payee receives the note from maker, and is *then* a party.

I. ASSIGNMENT.—It was error to receive the note, because its legal effect, (if it bind Collins in any event,) is only to charge him as 2d indorser to a proper *legal* holder, and does not *import* a liability to Everett *at all.*

The holder of negotiable note may write over first or any blank indorsement, a special order to pay himself, or to "his own order," or to himself "only." *Story, P. N.* §138. *Do. on B.* §207. 3 *Kent Lect.* 44, *p.* 89.

Where holder does this, he, *ipso facto, discharges* all intermediate indorsers. *Story, B.* §207, 8. *Bay, B. ch.* 11, *p.* 464. *Chit. B.* 628, 31. 2 *Phil. Ev. (4 of notes,)* 19.

Now Everett is in precisely the same position of such a holder. Being payable to him " or order," and not by him indorsed, the law presumes that the *title* and interest in it has never passed out; that Collins never had any title, and could not convey any; at least, he could never be liable to a *prior* party; one who, by the essential theory of the law merchant, must have *parted* with all title and interest in the paper *as a note ;* and a note is never evidence that an indorser or payee has become the owner of it the second time. 4 *T. R.* 470. 1 *H. Bl.* 606, 7. 2 *B. & C.* 483. *Ch. B.* 29, 30. 5 *Ad. & Ell.* 436. *Bay, B.* 48.

The note does "not, under the usage and custom," imply any liability by Collins to Everett, and exclusive of the usage, plaintiff (below) should have set out his cause specially; he must have set out and proved a *consideration,* (which the proof shows did not exist here). *Ib. Ch. B.* 29, 0.

The presumption of law in a case like ours, is, that Collins was to be bound as second indorser on such a note, and only as second indorser; i. e. after the payee. *Story, P. N.* §480. 480 *n.* *(p.* 559.*)*

And this is the law, whether he indorsed first in point of time or not, or whether payee had indorsed at all. *Ib.* 12, *J. R.* 159. 3 *Hill, N. Y. R.* 233 . 7 *Do.* 416. And this, though he knew the object was to secure a credit for the maker. 3 *Hill, N. Y.* 233.

Payee of such note, hence, cannot recover at most on the note of *indorser.* 12 *J. R.* 159. 10 *Do.* 224. *Ch. B.* 568. 2 *B. & C.* 483. *Story, P. N.* §128, *n.*

1st Count.—And here we dispose entirely of the 1st Count, which charges Collins as security (surety) under our act of 1826. That act does not change the rights or position of any party on or to the note, (in cases contemplated by it,) except *only* as to *dispensing* with *notice*, and making indorsers suable in the same action with maker.   1 *Kelly*, 205, on *p*. 209.

The plaintiff must be *a* plaintiff, who, before the Act of 1826, could sue defendant *as indorser*, defendant being liable *as* indorser without the act, the act says he, *ipso facto*, becomes surety.

But the act does not create a liability, where there would have been no liability without it.   *Ex Gr.* the act does not mean that a maker can sue an indorser.

Now, it is not pretended that Collins is liable on the *note as indorser* to Everett, by the C. Law.   Collins is not, by the usage and custom, indorser to Everett, and if not liable as *indorser*, the Act of '26 does not take effect.   For if the act do not refer alone and exclusively to *indorsers* technically, then it leads to an absurdity ; if it embrace every one who writes his name across a paper, and means that any such name on a note is liable *indiscriminately* to every holder of the note, whether that holder be a *prior indorser* or not, or a prior party, as payee, or not; then, all is confusion and absurdity, and the maker could just as well sue a second indorser as any prior indorser could.   We here speak of the legal import, without parol proof, which, as will be shewn, is inadmissible to change that import.

2d Count.—Stricken out on the trial, (charging as guarantor.)

3d Count.—The *note* alone does not sustain this count, because the law presumes defendant in such case was *not* interested in the consideration.   17 *J. R. p.* 329.   13 *Do.* 175.   *Story, P. N.* §134, 476 *n.* 2.   That fact must exist, *or* it must appear that he agreed to sign as original promissor.   17 *Wend.* 215.   13 *J. R.* 175.   (Which facts were not here proved.)

II. Assignment.—The note alone not being sufficient to charge Collins, *parol* testimony was illegal to add to or *vary*; and the record shows that there was none but parol testimony.   Hence the no e never became legal evidence.

Parol not to controvert a writing, (5 *Rep.* 26,) nor to show any different stipulations made *at* the time, or *before*.   *Ch. on Cont.* 99.   1 *Kelly*, 12, on *p*. 18, 9.

Same rule applies to *bills* and *notes*.    *Chit. Cont.* 102, 3, 105, 6. 1 *C. M. & R.* 703.

An *indorsement* has a *fixed* legal character, and merges all stipulations made *before* or *then*.    2 *Hill, N. Y. R.* 84.    *Ch. B.* 162, 164.    2 *Bar. & Cres.* 483.    *Story, P. N.* §458.

To same point as to *indorsers*.    4 *E. C. L. R.* 31.

Everett being liable in legal presumption, prior to Collins, shall not be permitted to show by parol a contrary contract, made at the time, or before.    2 *Bar. & Cres.* 483.    The contract sued on, having thus a legal import, it is not allowable to prove that Everett was *mistaken* in the legal import of the instrument.

AMERICAN CASES.—These alone embarrass the question at common law.    The New York cases are mostly with defendant, while many Massachusetts cases seem opposed, though Judge Story (a Massachusetts man) says the New York doctrine is the better. *Story P. N.* §134, §480, *n. p.* 559.

But the Massachusetts cases, where the facts were strictly analagous, are not really opposed.    They all required some fact to be proved, (as that the indorsement of defendant was prior to delivery to plaintiff, (payee,) *or* that defendant was interested in the consideration,) before they applied the doctrine of *legal import*, which is begging the question, as to our point.    Our point is, what is the legal import, wholly apart and independent of any proof *whatever*?    For if the note by itself *have* a legal import, then, as already shown, that must govern, and cannot be *changed* by parol.    See *Story P. N.* §§134, 476, *n.* 2, 480.    3 *Hill N. Y.* 233.    17 *J. R.* 329.

But the Massachusetts cases are not opposed, because the doctrine has been there finally confined to notes *not negotiable*.    *Story P. N.* §476, *n.* 1, ruled by C. J. Parsons, 8 *Pick.* 423.

The Massachusetts doctrine *arose* in a case *not* negotiable.    3 *Mass. R.* 274, *(Joselyn vs. Amis.)*

III. ASSIGNMENT.—If parol evidence may sometimes be received to explain, and written testimony may even vary ; neither sort was lawful in this case, as plaintiff declared on the note *solely* as an instrument, and had no special count to let in, *varying* testimony.

The *allegata* and *probata* must agree.    1 *Stra.* 648.    2 *Tuck. Com.* 148.    6 *T. R.* 325.    Plaintiff cannot declare on *one* contract, and prove *another*.    *Ib.*

"The facts must be so plainly, fully and distinctly set forth, as to

inform defendant of the *grounds* of the action." 2 *Kelly*, 258. 1 *Ib*. 70. 1 *Ch. Pl.* 215.

Cannot at the trial substitute a new agreement for the one *declared* on. 27 *E. C. L. R.* 525.

If any part of the contract proved vary from that stated in the pleadings, the whole must *fail.* 1 *Phil. Ev.* 207–8. And this rule is applicable to bills and notes. *Ib.* 3 *B. & P.* 559. 4 *T. R.* 611.

If a note is declared on by its legal effect, and there is any failure, the note cannot be given in evidence. 2 *Phil. Ev.* 445. *n.* 3. 7 *Cranch, R.* 208, in point.

IV. Assignment.—Admit that parol evidence was legal, still the Court erred in this charge : That Collins' liability depended on the question, whether he indorsed *before* or *after* the note was delivered to Everett. That if *before*, though there "was no other explanation of his liability," Collins was liable.

Because in this the Jury were virtually told : . They need not believe Collins interested in the consideration; or that he *intended* to bind himself as maker, or surety; or that he and Everett had any understanding about it. The charge assumes this position : That if one indorse a *negotiable* note, prior in point of *time* to payee's receiving it, he *thereby* becomes liable to payee as original promissor, which we venture is without the authority of a single case in the range of the books, where the point was *made* and *decided* in the cause. See even the Massachusetts cases. 11 *Mass. R.* 436, 440. See also 13 *J. R.* 175. 17 *Wend.* 215. *Story P. N.* §476, *n.* 2, 480.

Such indorser, though prior in time, is presumed to be liable *only* as second indorser, and Judge Story says this is the weight of authority. *Story P. N.* §134, 480, *(p.* 559,*) n.*

V. Assignment.—The Court erred in charging, that "the contract of Collins was not *complete* until the note was delivered to Everett."

Delivery to payee not necessary to vest legal interest. *Ch. B.* 195, 255. 5 *East*, 477.

Indorsement binds, though indorser actually *die* before the *date. Ch. B.* 240. 13 *East*, 517. 2 *Maule & Sel.* 90. To same point, *Story, P. N.* §122. 5 *Cranch*, 142.

If said that this charge of the Court was not necessary—was only as a reason, the reply is, " if it *might have affected* the finding, it is

ground for error. 9 *Cowen*, 674. 3 *Hill, N. Y. R.* 389. 11 *Wheat.* 59. 7 *Cranch*, 506.

VI Assignment.—There was error in the charge, that, if Collins indorsed after Moore signed, and before delivery to Everett, even *without* any explanation, he is liable as joint, or as joint and several promisor.

Because of the reasons and rules of law developed under IV. Assignment.

VII Assignment.—The Court erred in charging that the note was not the only legal evidence before the Jury. This being in reply to a request to charge that the *parol* was *not* legal.

All the testimony, except the note, was *parol*, and that has been shewn to be illegal for reasons set forth in II. Assignment.

Finally, and this reaches the *merits*—

VIII. Assignment.—This is a case of *patent ambiguity*, and parol was not legal to *explain*, far less to *vary*. The note or writing *in Everett's hands* is incomplete as a contract—ambiguous on its face—a mere *nullity* and *void*.

As to latent and patent ambiguities. *Ld. Bacon's Max. Reg.* 25. *Broom. L. Max.* 132, *(260–1.)* *Chit. Cont.* 104.

Though Collins' liability, as shown, (under 1st Assignment,) is fixed as second indorser to any holder *subsequent*, yet in Everett's hands the *note* shows no contract.

General Rules on this doctrine. 1 *Mass. C. C. R.* 9. *Ch. Cont.* 104. 2 *Stark. Ev.* 755.

*A patent* ambiguity is not *explainable*. 2 *Stark. Ev.* 756–7. *Ch. Cont.* 104. 35 *E. C. L. R.* 162.

Such an instrument is *void*. 4 *Bar. & Ald.* 57. 5 *M. & W.* 363.

Examples of *Latent*. 1 *Phil. Ev.* 531. 1 *Bl. R.* 60. *Broom, L. Max.* 132. *(264.)*

Examples of *Patent*. 6 *Co.* 68. 2 *Vern.* 624. 2 *Stark.* 756. 2 *Atk.* 239. *Broom*, 261.

And this rule of Law as to *patent* ambiguities, extends to Bills and Notes. 35 *C. E. L. R.* 162. *Broom*, 262. *Bing. N. C.* 425.

Parol never admitted to explain an ambiguity which is *not* raised by *extrinsic* facts. 4 *B. & Ald.* 57. 2 *Stark. Ev.* 756–7.

(Ambiguous *words*—words that mean two things—may be explained. 1 *Mass. C. C. R.* 10. This being *latent* as to the whole contract.)

Here the ambiguity is that in Everett's hands, without *some*

proof, the contract has no fixed legal import.   It is wholly with-
out meaning, is on its *face* ambiguous, and when tendered in evi-
dence by Everett, being solely declared on as his contract and
cause of action, it is a mere nullity and *void.*   35 *E. C. L. R.* 162.
4 *B. & Ald.* 57.   5 *M. & W.* 363.

*By the Court.*—Nisbet, J. delivering the opinion.

There were originally three counts in this writ—one, which
charged the defendant, Collins, as guarantor, seems to have been
abandoned.   Of the other two, one charges him as surety to the
maker, under the Act of 1826 ;  and the other as an original prom-
isor.   The Court below having admitted parol testimony to show
at what time, and under what circumstances, Collins indorsed this
note, charged the Jury, " that the recovery by the plaintiff de-
pends upon the time at which the name of the defendant was writ-
ten upon the note.   If you believe from the testimony, that the
defendant wrote his name upon the note, before it was delivered
to the plaintiff, without further explanation of his liability, then
you ought to find for the plaintiff ; for the contract was not com-
plete until the note was delivered ; and the payee may treat the
defendant as a joint maker or surety.   And the writing of the
name on the back of the paper as effectually binds the party as if
it were written in the face.   If Collins was interested in the orig-
inal consideration, then he is liable as a joint maker ; if not, then
as surety.   But if you believe from the evidence, that Collins did
not write his name on the back of the note, until after the deliv-
ery of the note to Everett, you ought to find for the defendant."
To the admissibility of the parol testimony, the defendant excepts
—also to the charge of the Court; maintaining, that according to
the legal effect of the instrument, if Collins is liable to the plain-
tiff, he is liable only as indorser, and therefore cannot be liable as
surety, or as joint promissor.   And farther, that if the parol tes-
timony was properly admitted, yet Collins is not liable as surety
or joint promissor, if " he signed the note before the delivery of
it to Everett, the payee ;"  and can only be made liable as such,
upon its being proven, that by agreement with the payee, he con-
sented or intended to be so held liable.

[1.] I shall review these questions, first in the light of the Law
Merchant, irrespective of our Act of 1826.   According to Com-

mercial Law, we think with the plaintiff in error, that this defendant, by the legal effect and character of the instrument, is an indorser, and can be made liable in no other character.

There is no rule of pleading better established, than that a note must be sued on according to its legal import. *Lord Kenyon in Bishop vs. Haywood,* 4 *T. R.* 471. The plaintiff not having declared against the defendant as indorser, if the legal import of the note is such as to give him that character, it follows that the plaintiff cannot recover. According to the principles of the Common Law, the import of this instrument to my mind is clear—and its character decidedly fixed. It is made by *Moore,* payable to *Everett, or order,* and indorsed by *Collins.* It is negotiable—not by delivery, but by indorsement. The title being in Everett the payee, and being negotiable only by his order, there it remains until he chooses to pass it out of himself. And inasmuch as the title could not pass without his indorsement, Collins must be held in legal contemplation to occupy the position of second indorser, with all the rights which appertain to a second indorser, and with the liabilities which attach to him as such. He is presumed to have indorsed with reference to these rights and liabilities—he is presumed to have indorsed with a knowledge of the law which would govern his indorsement. And the payee is presumed to have taken the paper with a knowledge of the extent of the indorser's liability; for he too, is to be held cognizant of the law of the land. We are to hold as a general proposition, that contracts are made with reference to the laws which are to govern them. Thus, if one indorses a commercial paper, all who receive it, are taken as conceding the legal rights of the indorser, as established by the Law Merchant. So the indorser becomes a party to the paper, with the implied concession of his liability, as fixed by law.— Nothing in the science is more familiar than these general principles. Now it is admitted that this instrument departs from the usual form of negotiable paper. The usual form is to make the note payable to the indorser, who putting his name on it, by ordinary sequence, the title passes. Here the payee is a distinct person from Collins, whose name is on the note as indorser— there is no privity between him and the payee. If Everett the payee, was in fact the original creditor, or if he was not, but the note was made payable to him, with the expectation and intent to procure his name as first indorser; in either event, Collins' po-

sition is that of indorser. If the latter was the understanding, and it were carried out, there would be no controversy about his position—it would be that of an ordinary indorser. If, however, the former be true, and the note was delivered to Everett with Collins' name upon it, for a consideration passing immediately to *Moore*, the maker, from him—still, Collins is an indorser. The record, however, shows that *Everett*, the payee, is the owner of the paper—that it is payable to his order, and that Collins' name and no other, is upon it. In this state of the case, I hold Collins an indorser, for the credit of the maker, and liable, not to the payee *Everett* as his indorser, but to such names as might in the negotiation of the note, come after his own. It is not necessary, in order to sustain our position, to demonstrate that Collins may be made in some form, liable to the plaintiff. Nor does it follow, that because the payee cannot be an indorsee to Collins, he, Collins, cannot be an indorser. We say that he is an indorser with his liabilities restricted according to the instrument upon which his name appears. In order to the negotiation of this note, there is a legal necessity that the payee's name should be on it. Suppose it was upon it, he would, by the necessity of legal rule, be an indorser precedent to Collins. And if so, he is not Collins' indorsee. Upon the paper then alone, he could not go against Collins. Nothing is plainer than that an indorsee may resort to preceding indorsers for payment—and nothing is plainer than that the reverse of this rule, as a general proposition, has no foundation in the law. 4 *T. R.* 471. From aught that appears, Collins indorsed this note for the accommodation of the maker and the payee, upon the responsibility of the maker and payee, as first indorser—this is the import of the instrument. The fact that the note is still in the hands of the payee, does not import any thing different. The fact that the payee may have rights, springing from matters *dehors* the instrument, is not the criterion for our judgment. We look at the note with the indorsement, and to it we apply the principles of the Commercial Law, and by that test, we can arrive at no other conclusion. And to this conclusion we are conducted, not alone by general principles, but by authority. *Herrick vs. Carman*, 12 *Johns. R.* 159, 160. 10 *J. R.* 224. *Tillman vs. Wheeler*, 17 *Johns. R.* 328, 329. *Seabury vs. Hungerford*, 2 *Hall, N. Y.* 80. *Hill vs. Newcomb*, 3 *Hill, N. Y.* 233, 234. 11 *Conn. R.*

My object, thus far, has been to demonstrate that according to
the Common Law, Collins occupies the position of a second in-
dorser upon this note and cannot be liable as surety or joint
promisor.   I deem it necessary again to say, that it does not fol-
low from that position that he is liable to this plaintiff as his in-
dorsee, upon the paper—the contrary follows.   I am free to ad-
mit that there are cases in the books, where an indorser, situated
as Collins is upon this note, has been held by *a special case made,*
liable to the payee.   In *Bishop vs. Haywood, Lord Kenyon* ad-
mits that such a thing may be.   And I farther admit, that if this
note was payable to *Everett* alone, that is, if it was not negotiable
—a different rule would obtain.   Inasmuch as it is negotiable, and
is payable to *the order* of Everett, and Collins' name is on it, the
legal import is, that he is the second indorser, and to him attaches
all the rights of such a position.   His liability is secondary—he
is entitled to demand and notice, and to reimbursement, in case
he pays the note; the note having previously been indorsed by
the payee.   And we cannot give to the paper such import as
would make him primarily liable as original promisor.   The
note and the indorsement is the evidence of the contract.   We
cannot step aside from the principles which declare its effect, and
give to it a different construction.   We disclaim the right to
make laws, in order to avoid what may be claimed as a hardship.
If it be conceded, for the sake of the argument, that in a given
case the administration of the law works injustice, still it is the
duty, as it is also the pride of this Court, to declare it.   Our
powers are circumscribed by the laws, be they what they may,
which are constitutional, and not in conflict with the great funda-
mental principles of the government.

There are several cases in the American Books, where an indorser
upon a note payable to the order of another person, in a suit by the
payee, has been held an original promisor upon a special case made.
And this has been done, not by a construction of the instrument
itself, but by letting in parol testimony, to show an undertaking so
to be bound.   *Such was the case of White vs. Howland,* 9 *Mass.*
314, *and of Moise vs. Bird,* 11 *Mass.* 435.   *Herrick vs. Carman,*
12 *Johns. R.* 159.   *Nelson vs. Duboise,* 13 *Johns. R.* 135.   In all
these cases, and in most others of like character, it seems to be
conceded that such a character could not be given to the indors-
er upon the instrument alone, and therefore parol testimony was

Collins vs. Everett.

admitted to prove him an original undertaker. This, I infer from the cases, need not be proven absolutely, but the extent to which the cases go, is, that there must be evidence of an agreement to be bound to the payee. "If," says Mr. Justice Bronson, "the note is negotiable, the only inference to be drawn from the fact of his putting his name on the back of it, is, that he intended to give the maker credit by becoming answerable as indorser, and this inference is so strong that it will prevail even when his obligation as indorser cannot be made operative without first obtaining the name of another person upon the paper. *Before he can be made liable as maker or guarantor, there must at least be an agreement that he will answer as such.*" Seabury vs. Hungerford, 2 Hill, N. Y. R. 84. The same learned Judge also says; "It is not enough that the indorser knows what use is to be made of the note, or that he indorses for the purpose of giving the maker credit, either generally, or with a particular individual." The case of *Nelson vs. Dubois*, 13 John. 175, went upon the ground expressly, that the indorser *agreed to be* bound to the payee for the amount of the note at the time it was given. In that case, it was in evidence that the plaintiff refused to sell the horse, which was the consideration of the note, until the indorser did so agree. In *Hall vs. Newcomb*, the same doctrine is held. In this case, the defendant (the indorser) knew what use was to be made of the note; he was privy to the consideration. Yet the Court held that that was not enough. Cowen, J. said : The note in question was payable to the plaintiff *or order*, and there was nothing in the indorsement by the defendant, to indicate that he meant to be considered liable in any other character, than that of a strictly commercial indorser. True, he knew what use was to be made of the note, he was privy to the consideration. But so is every accommodation indorser, who becomes a party, with intent to raise money at a particular bank. This takes nothing from his right to require presentment and notice, provided the note is negotiable." 3 Hill, N. Y. 234. See also Dean vs. Hall, 17 Wendell, 214. Now, what do these authorities prove? Clearly this, that in cases like the one at this bar, if the parol testimony be admitted, yet the indorser cannot be charged as surety to, or joint promisor, unless it be proven that he agreed to be so chargeable. There are cases which charge him, upon proof of being privy to the consideration; but the weight of the authority does not stop at that.

They require proof of an agreement. Now, the position taken by the Court below, stops short of both these requirements. The Judge holds that proof that the indorser *put his name upon the paper before it was delivered to the payee*, is sufficient to charge him as surety or joint promisor with the maker. In our judgment, that opinion is not sustained by the authorities. There are cases, where, with a view to determine whether the undertaking be original, or a subsequent guarantee, and that, to determine the applicability or not of the statute of frauds, the *time* of the signature becomes vital. In this case, the question of guarantee and of the statute of frauds is not made. The count in the declaration, which charges Collins as guarantor, was abandoned. It occurs to me that if liability as surety or promisor can be fixed upon Collins, by parol testimony, it can only be done by proof of *an agreement,* and that he did so agree ought to be *specially averred in the declaration.* If the pleadings are only according to the paper, I cannot see, if upon other grounds the parol testimony be conceded to be admissible, how it can be adduced under the declaration. So that, according to the principles of the Common Law, we think the Court erred in not ruling according to the request of Counsel for the defendant, that the legal import of the note sued on, was to make the defendant liable as second indorser, and that the court also erred in charging the jury, that if they believed from the evidence that Collins signed the note before it was delivered to the payee, he was liable as surety or joint promisor.

[2,] In the discussion of the last named position of the Circuit Court, I have gone, as I must needs go, upon the concession that the parol testimony, in this case, was rightfully admitted. But was it? We are satisfied that it was not. Enough has been already disclosed, to show that before highly respectable courts in the United States, in similar cases, it has been held admissible. Yet in relation to these cases, this idea, (before suggested) may be taken, to-wit: that the special case of agreement was made in the pleadings, set up as the ground of liability at the time of, or anterior to the indorsement. Here, by the pleadings, Collins is charged as surety, according to the tenor and effect of the note. It may be held doubtful, whether such testimony be not excluded by the form of the pleadings. But aside from this view of the matter, upon general principles, the evidence was not admissible.

Collins *vs.* Everett.

In the case of *Stubbs vs. Goodall*, *(4 Kelly's R.* 106,*)* tried be-
fore this court, at Savannah, in January last, the same question was
made,and after a solemn and very able argument,determined against
the admissibility of the evidence.    In that case in a suit against an
indorser, upon a note not made payable at bank, or there discount-
ed, or deposited for collection, the defendant offered to prove
that it was the intention of the parties that it should be negotiat-
ed at a chartered bank.    Upon the face of the note and by ope-
ration of our act of 1826, the defendant was not entitled to de-
mand and notice, before liability.    According to the contract, as
proposed to be set up by the parol proof, he would be liable on-
ly as an indorser at Common Law, that is *after* demand and no-
tice.    The effect of this testimony would be to introduce a new
rule of liability for the indorser, and impose additional obligations
upon the holder.    It was, therefore, essentially to vary the writ-
ten contract, and was properly rejected.    For the same reason, it
ought to be rejected in this case.    The legal import of this instru-
ment, is to make Collins a second indorser, with secondary lia-
bility, according to the Common Law, upon presentment for pay-
ment and notice, and with the right of going upon a previous in-
dorser, if any, in the event of his having the note to pay.    The ef-
fect of the parol testimony, is to change altogether this *import*,
and to make Collins primarily liable as an original promisor;
to substitute a new contract, in short.    The writing is the evi-
dence of the contract.    If that is plain—if from that the meaning
of the parties is fairly deducible, it must stand.    The law will not
make for them a new contract.    It comes in, as in case of latent
ambiguities, to elucidate a clear provision, made obscure by some-
thing foreign to the instrument.    But no authority is found in
the books, from the reign of Alfred to this day, for the incorpora-
tion in a deed by parol, of a new limitation—in a will, a new de-
vise, or in a contract, a new and distinct obligation.    The rules of
evidence touching this subject, ought to be more stringent when
applied to negotiable paper, because, in proportion as the rights
of parties to notes and bills are made to exist in parol, their nego-
tiability will be restrained.    Commercial expediency strongly
forbids all interference with the contracts of parties, as the law
declares them upon the face of negotiable securities.    If, as we
believe, this instrument has a clear legal character, we cannot
change it by parol.    If it affords evidence of a contract, we cannot

alter, add to, vary, or contradict it, much less can we substitute for it an entirely new contract. I shall not attempt any argument, or review of the authorities upon this branch of the cause; for both, I refer to the case of *Stubbs vs. Goodall*, decided by this Court, at Savannah, in January last.

[3.] Whilst we are constrained to correct what we conceive to be errors in this record, we nevertheless sustain the judgment under our own act of 1826, and upon the first count in the declaration.

Our construction of this instrument upon Common Law principles, is, that Collins is an indorser; and it is in reference to this class of persons, that the General Assembly, in their Act of 1826, legislated; for the act is in the preamble declared to be, "an act to define the liability of *indorsers of promissory notes*, and to place them upon the same footing with securities." Although we do not hold the preamble of an act by any means conclusive as to the intention of the Legislature, for that is to be ascertained from the body of the act itself, in the main; yet it is a legitimate aid to construction. By the act itself, as well as by the preamble, we arrive at the conclusion that the intention of the Legislature was to repeal the Common Law, so far as it establishes certain legal relations between the holder of a promisory note not given for the purpose of negotiation, or intended to be negotiated at any chartered Bank, nor deposited in any chartered Bank for collection, and the indorser upon such a note. What those relations were, are well known. The liability of the indorser was collateral, or secondary—that is to say, although liable to the holder, yet it was on condition that the maker failed upon demand to pay, and that he had notice of the demand and refusal. By the Common Law, too, the holder could resort to an indorser only in a several suit. The Legislature repealed the Common Law in these particulars, and established a new and wholly different relationship between the holder and indorsers—the relationship of payee and original promisor—and placed the indorser upon the same footing with securities. The word securities in the Act, is synonymous with promissors, in its relation to the payee, or the holder of the note. It is descriptive of the relation which an indorser, under the Act, would bear to the payee or other holder. That is to say it gives to him the rights and remedies against the indorser, which he had before the Act, against one who was in all particulars a

surety. That act was designed for the relief of the holder, to re-move from the payee the burden of the demand and notice, which the Common Law cast upon him—and to facilitate his remedies. The preamble asserts the object of the Act to be, to define the li-ability of indorsers, and " to place them upon the same footing with securities." The footing, *status*, of sureties was that of pri-mary liability, without demand and notice. ' To that *position*, the indorser is remitted, by the Act of 1826. To analyze this Act. The first proposition is, " That the practice heretofore required of making a demand upon makers of promissory notes and other in-struments for the payment and performance of the same, and the giving notice of such demand within a reasonable time to the indorser of said promissory notes and other instruments, shall cease and become entirely unnecessary to bind said indorsers." The second proposition is, " Whenever any person whatever, in-dorses a promissory note or other instrument, he shall be held, taken and considered as security to the same." The third is, " That he shall be in all respects bound as security, until said promissory note or other instrument is paid off and discharged." And the fourth, " He shall be liable to be sued in the same manner and in the same action with the principal or maker of said promissory notes or other instruments." There are two provisos to the act; the first with-holds its operation from promissory notes, " which shall be given for the purpose of negotiation, or intended to be negotiated at any chartered bank, or which may be deposited in any chartered bank for collection." The second saves to the indorser the right of de-fining his liability in his indorsement. *Prince*, 462.

From this analysis, it is obvious that the Legislature intended to dispense with demand and notice in order to charge the indor-ser; to make him suable in the same manner as the maker, and, if desired, in the same action with him ; in short, to place him, ac-cording to the words which they used, *in all respects*, upon the footing of securities, to be bound as such until the note is paid. The language of the act is exceedingly broad and comprehensive, and various forms of expression are resorted to, as if to shut out the possibility of doubt as to its meaning. Thus, it declares, " whenever *any person whatever indorses* a promissory note, &c." intending, it would seem, by the generality of the terms used, to comprehend, not alone all classes of men, but all descriptions of indorsers, whether for accommodation, or a consideration, or with

a liability peculiar and special by reason of the form of the instrument, as in this case. They could not have said more, if they had said, that in all cases where a name appears upon an instrument, which is the evidence of debt, that name shall be as a surety to the owner of it. So, farther, with persevering labor, to be explicit, the General Assembly say, that in such a case, (that is any case, where any person shall indorse a promissory note,) the indorser shall be held, taken, and considered as security to the same, and be, *in all respects*, bound as security." How can we, under such general words, and in defiance of specifications thus minute, take this case from the operation of the statute? To do so would be to defeat the intention of the Legislature. Let it be remembered too, that in the construction of the statutes, we have no vocation, with ingenious subtlety, to defeat what the Legislature has enacted—our duty is, with open fairness, to give effect to its will. If that will is to be ascertained alone from the two distinct enactments, to-wit: those which dispense with demand and notice, and make the indorser suable in the same manner, and in the same action with the principal or maker; *then*, it is the will of the legislature that the indorser be a surety. Because the distinguishing privilege of the indorser at common law was to have a demand made upon his principal, and to receive notice of his refusal to pay, and to be severed in the action. If these are taken from him, what remains to distinguish him from an original undertaker? Denude him of these attributes of character, and his character is changed. He assumes the attributes which characterise a surety.

It may be said, that upon Common Law principles, as to the payee of this note, Collins is not an indorser, and not being an indorser as to him, he is not made by the act a surety as to him. The reply to this idea is, that the act itself makes any *person whatever* who indorses a note, a surety. There is no exception in it. And if the indorser is recognised at Common Law, for any purpose and to any extent as such, he is embraced in the terms, and falls certainly within its spirit. We have decided that Collins is, at Common Law, an indorser, he is, therefore, under the act, a surety. If he be at all an indorser, the statute comes in and attaches to him the liability of a surety. To sustain this action, it is not necessary that we establish a title to this note in the plaintiff, upon the principles of the Law-Merchant. For, observe, that

Collins *vs*. Everett.

the Legislature has not only made him a surety, but has declared that he shall *be sued* as maker. The remedy is given at the same time as the right. Wherever there is an indorser, the right to sue him vests in the payee by virtue of *the sovereign, ordaining power of the Legislature.* The record discloses that this plaintiff is the owner of the note; it is made payable to him and his order; he is in possession; it comes out from him on the trial; it shows that Collins is an indorser; the pleadings charge him as surety under the act of 1826, and we have no alternative but so to hold him. If there were doubt of the fact that the intention was to hold the indorser liable as surety, it is removed by these further considerations. The second *proviso* authorises the indorser *to define* his liability in the indorsement. Under it, by a special indorsement, he may retain his Common Law right to demand and notice, and also his right to be sued severally. He may, in short, prevent that general effect of the statute which puts him in the position of a surety. Now, why provide for these things in a special indorsement, by *proviso*, unless in the body of the act they are taken from him? Why allow him, by *proviso*, to define his liability in character of indorser, unless by the general operation of the act, his character as such, had been annihilated? Such a concession implies a previous negation. Dr. Collins, farther, under this proviso, might have retained his character of indorser; he might have made demand and notice a condition precedent to liability; he might have declared that he was in no event to be liable to the plaintiff, and that the sole object of putting his name upon the paper was to give credit to it in after stages of its circulation; he might have made, with the parties in his indorsement, any contract not repugnant to the Constitution and laws. He has not done so. And what is the inference to be drawn from his omission to define his liability? It is that he contracted to take upon himself the liability to the payee, which the statute imposes, to wit: the liability of a surety. For he is presumed to be cognisant of the provisions of the act, and to have contracted in reference to them. It is difficult, if this note and this statute be presented side by side, before the judgment seat of reason, to imagine that she could award any other sentence, than that of liability, on the part of Collins as surety.

Again: that the Legislature intended to make all indorsers upon notes not intended to be negotiated or payable at bank, sure-

ties, is manifest by subsequent legislation. The acts of the Legislature which relate to the control of executions by sureties and indorsers, against principals and prior indorsers, are *in pari materia* with the Act of 1826. Sureties on appeal—on stay of execution—on recognisance, and on bonds and notes, upon paying off a judgment against their principals, are authorized to control the execution against their principals. And by the Act of 1839, an indorser who has paid the judgment founded on a note negotiated or payable at bank, may control an execution against his prior indorser, for reimbursement. But no where in the statute book is any provision made for an indorser upon a note like this, not intended to be negotiated at bank, to control an execution against his principal or prior indorser. We cannot account for this omission, but upon the hypothesis that the Legislature considered indorsers upon notes not intended to be negotiated at bank, as sureties, and provided for in those acts which relate to them.

We think the plaintiff ought to recover on the first count in the declaration, and affirm the judgment.