NEAL & COMPANY *vs.* WILSON.

1. Where a promissory note is upon its face payable to the order of the payee at a chartered bank, though reading "we promise to pay," etc., and signed by one person only, the *prima facie* import of an indorsement thereon in blank by a third person is, that such indorser undertakes to be liable as a second indorser, and not as a joint maker.  The true intent of the parties, however, in an action by the payee upon the instrument, is open to explanation by parol evidence.

2. Where a firm has two agents, and one of them signs a note in his own name, and the other indorses it in blank in the firm name, and the payee lends money upon it by giving a check upon a bank payable to the firm, though the check be delivered to the agent who signs individually, this is *prima facie* a loan to the firm and not to the individual, and though the latter converts the money to his own use, the firm is responsible on the note, if the payee was not aware of or privy to the intended conversion.

3. On the question of notice or privity, the understanding of the payee's agent at the time of lending the money and taking the note, as to whether the firm was to be bound as maker or only as indorser proper, is pertinent and admissible.

October 4, 1887.

Promissory Notes. Indorsement. Evidence. Principal and Agent. Notice. Privity. Before Judge VAN EPPS. City Court of Atlanta. June Term, 1887.

Reported in the decision.

BROYLES & JOHNSTON; JOHN A. WIMPY, for plaintiffs in error.

T. P. WESTMORELAND, for defendant.

BLECKLEY, Chief Justice.

In the year 1883, a promissory note was executed to Mrs. Wilson, payable to her order at a chartered bank. It was signed at the bottom by an individual, and was indorsed in blank by a firm, John Neal & Company. After maturity, suit was brought upon it by the payee against the individual and the firm as joint makers. The language of the instrument was, " We promise to pay to the order," etc. The case was tried on pleas by members of the firm, setting up that the note was indorsed in the firm name by an agent of the firm for accommodation, without authority; and it was also insisted that there was no protest or notice of protest to bind the indorser. Verdict was rendered for the plaintiff, and a motion for a new trial was made and overruled.

1. The court charged the jury that if the note was indorsed by the firm before delivery to the payee, the *prima facie* import of the firm's signature on the back of the note is that the firm was a joint maker. This charge, we think, was error. The *prima facie* import of that indorsement, according to the ruling of this court in *Collins vs. Everett,*

v 79—47

4 *Ga.* 266, is an undertaking as second indorser. The instrument, read without any explanation from extrinsic evidence further than as to the time of execution, would mean that it was to be indorsed by the payee, who would become liable as first indorser, and that the liability of the firm would be that of a second endorser. Were the note not payable at a chartered bank, it would fall within the operation of the act of 1826, which declares that on any indorsement to which the act applies, the liability of the indorser shall be that of a surety. *Collins vs. Everett* construed that act, and held that the note then in question was embraced in its terms, the same not being payable at bank. But the act expressly excepts all paper payable at a chartered bank, and consequently this instrument is left to the operation of the common law. Reading *Collins vs. Everett* in connection with *Camp vs. Simmons*, 62 *Ga.* 73, there can be no doubt, we think, that this indorsement imports a liability as second indorser on the part of the firm, and not otherwise. It is open, however, under the code, §3808, to explanation by parol evidence; and if, according to the real transaction, as the parties intended and understood it, the firm was a joint maker, there can be a recovery upon the note, notwithstanding it is payable at bank, because since such indorsements have become open to explanation by the code, they are to be treated as ambiguous ; and by parol or other extrinsic evidence, the real character and relation of parties signing in that way may be ascertained. Of course, unless there be a contract of indorsement proper, there would be no right to notice of dishonor; because whether paper be payable at a bank or not, there is no right to such notice in favor of an indorser who is merely formally such; there must be a real contract of indorsement. If the only contract of the partnership was one of original undertaking, and not a contract of indorsement, there would be no right to notice, and no duty to protest the paper for non-payment. Code, §2781. The

apparent contract of indorsement as the paper stands is an incomplete one, and dependent for its completion upon indorsement by the payee. Moreover, if it was the real design of the parties that the paper should be used in the manner that its face indicates it was to be used, of course there is, upon it, no liability by the firm to the payee at all, because the second indorser in blank is never liable as such to the first indorser. Code, §2780.

2. The court charged the jury, in substance, that if a check, delivered as consideration of the note, was made payable to John Neal & Company, the money drawn upon it would be their property, and subsequent misappropriation by the person who drew the money would not be imputable to the payee of the note. Under the special facts, we think there was no substantial error in this part of the charge, because it appeared that Sells, who signed the note as an individual, and to whom the check was delivered, was one of the agents of the firm. The note was signed by this agent in his individual name, and indorsed in blank by another agent of the firm in the firm name, and the check was delivered to the agent who signed as an individual. If the loan was really made to the firm, and the lender or her agent was not aware of or privy to any intention to misappropriate the proceeds of the check, of course any misappropriation occurring after the transaction was over would not affect her.

3. The agent of the payee (her husband), testifying as a witness in her behalf, was asked the question, on cross-examination, whether he understood at the time of the transaction that the firm was to be liable as an indorser. The court ruled out the evidence as incompetent. We think the evidence admissible, because it would throw light upon whether the loan was made to the individual, or to the firm, the witness being the agent through whom it was made, and by whom the note was taken. If the agent of the payee understood that the firm was undertaking as indorser merely, there is a high degree of probability

that he knew or suspected that the individual was getting or likely to get the consideration. An accommodation maker is more rare than an accommodation indorser. Such evidence would be in explanation of the blank indorsement, as tending to show in what way the parties really intended that indorsement to be construed.

Judgment reversed.