## BRYAN v. WINDSOR.

*Simmons, C. J.*—1. Blank indorsements of negotiable paper may always be explained as between the parties themselves, and accordingly parol evidence is, in any given instance, admissible to show that such an indorsement upon a promissory note was made simply to pass title and not to create liability in the indorser. Code, §3808 and cases there cited. See also *Galceran* v. *Noble*, 66 *Ga.* 367; *Bedell* v. *Scarlett*, 75 *Ga.* 56; *Neal & Co.* v. *Wilson*, 79 *Ga.* 736; *Eppens* v. *Forbes*, 82 *Ga.* 748.

2. It follows that there was no error in refusing to grant an injunction to restrain the further proceeding of actions pending on the appeal in the superior court, which had been brought in a county court by an indorsee against an indorser of promissory notes upon the latter's indorsements of the same in blank, these indorsements, as alleged, having been made merely to pass title, and with a distinct agreement that the indorser was not to be liable. While it is true that in such cases the superior court could administer in behalf of the defendant no relief other than such as he might obtain in the county court, he could in either of these courts make a complete defense at law by pleading and proving the facts as to the purpose for which the indorsements were made, and consequently there was no occasion for equitable interference.                    *Judgment affirmed.*

June 12, 1896. By two Justices. Argued at the last term.

Petition for injunction. Before Judge Fish. Sumter county. January 17, 1896.

J. H. Bryan brought a petition against John Windsor, to enjoin the further proceeding of suits brought by Windsor against him in the county court upon two promissory notes. The injunction was denied. It appears from the petition, that on February 2, 1894, Bryan, being the owner and holder of two promissory notes, indorsed them and sold them to Windsor for $60. One of them was for $180, dated January 31, 1891, due December 1, 1891, signed by J. J. Davis and payable to J. H. Bryan. The other was for $234.20, dated February 11, 1892, due October 28, 1892, signed by C. C. Davis and J. J. Davis, and payable to J. H. Bryan. The indorsement on the first was, "Pay

to John Windsor, Feb. 2nd, 1894," signed by Bryan; the indorsement on the other was simply the name of Bryan. The suits in the county court were commenced on December 28, 1894, and resulted in a verdict in favor of Bryan in August, 1895; whereupon Windsor entered appeals to the November term, 1895, of the superior court. The petition for injunction was brought on December 13, 1895. It is therein alleged, that at the time he sold the notes to Windsor, Bryan, being desirous of going to his home in Kentucky, asked Windsor what he would give for the notes, "and to be no hereafter" as to Bryan; that Windsor thereupon offered the amount for which they were sold to him, and upon receiving them, requested Bryan to put his name on the back of the $180 note, and Bryan replied that he would not put his name on the back of that paper so as to hold him accountable for its payment; that Windsor assured him that it was necessary for his name to be on the note, in order that Davis, the maker, might know that Windsor had purchased it, and further assured Bryan that it would never trouble him in the event Davis failed to pay it; and it was agreed between Bryan and Windsor when the trade was made, that Bryan's name was to be put on said note simply for the purpose of transferring the same, and in no wise holding him accountable to Windsor. His name was put on the other note simply for the purpose of passing title, Windsor agreeing that Bryan should not in any event be bound for the payment of the same. It was delivered to Windsor with the express understanding that it was not to trouble Bryan and there would be no recourse on him, and his name was in no wise to be an indorsement for the repayment of the note. He did not know that Windsor looked to him for their repayment until the suits were brought. Windsor had never demanded such repayment, although Bryan had been in Americus two or three months before the suits were brought. He never put over his name the words which appear above it on the $180 note,

nor authorized any one else to do so, nor has he any recol-
lection of their being there when he signed his name; and
any entry other than his name, which would tend in any
wise to hold him accountable to Windsor, is a fraud prac-
ticed upon him by Windsor without his knowledge and con-
sent. He remembers that he declined to sign his name
on the note until Windsor had assured him that it in no
wise held him accountable for any amount thereof. Wind-
sor said at the time of the trade, that he thought most of
the money could be made out of Davis by giving him time
and taking it by degrees—at least he (Windsor) would take
his chances. Bryan had previously done a good deal of
business with Windsor, and always found him all right; and
owing to such relations, relied on him implicitly to deal
frankly and honestly, having the utmost confidence in his
statements; and Windsor took the notes with full knowl-
edge of all the facts, and took advantage of the ignorance of
Bryan as to the legal effect of the entry on the back of
them, as well as of his misplaced confidence. There was
no consideration for the indorsement; the $60 paid being
for the purchase money of the notes. In addition to the
prayer for injunction, etc., Bryan asks that the contract of
indorsement be so reformed as to speak the actual agree-
ment already stated.

By amendment it is alleged, that soon after being sued,
Bryan went to Windsor and offered him $90, which sum
more than covered the $60 paid, with interest and all costs;
but Windsor refused to accept it. Bryan stands ready at
all times to pay said sum, provided Windsor will surren-
der to him the note and judgment recovered thereon, waiv-
ing no right to insist on the contract made as before stated.
Further, in order to convey title to the $180 note and to
show Davis that Windsor had bought it, Windsor insisted
that it was necessary for Bryan to sign his name on the
back of the note as it appears; and Bryan, supposing this
to be the law, agreed to sign for the purpose, provided he

was in no way to be held liable on his indorsement. This both parties agreed to; and Windsor assuring Bryan that he would in no wise be accountable for the repayment of the note, Bryan signed his name; and he brings this petition for the purpose of obtaining relief from the mistake as to the legal effect of the indorsement; and prays that the true contract may be set up and carried out, which was, to write only such indorsement as would convey the title without rendering the indorser liable.

*W. P. Wallis,* for plaintiff.