JOHNSON *v.* THE STATE.

1. Where the charge is larceny from the house by stealing goods from a wholesale store, the *corpus delicti* is not established without proof that the goods disappeared by stealing rather than by sale to retail dealers in the course of business. If the goods in question were not missed from the stock, and the stock was never ascertained to be short or deficient, the presumption is they were sold and not stolen.

2. A doubtful or contradictory confession by a man of good moral character, will not warrant a conviction where the *corpus delicti* is uncertain.

November 10, 1890.

Larceny from the house. Criminal law. *Corpus delicti.* Presumptions. Confessions. Before Judge VAN EPPS. City court of Atlanta. March term, 1889.

Reported in the decision.

L. P. SKEEN and W. T. MOYERS, for plaintiff in error.
F. M. O'BRYAN, solicitor, *contra.*

BLECKLEY, Chief Justice.

1. The charge was larceny from the house. The goods, alleged to have been stolen from the storehouse of F. E. Block, were one can of oysters, one can of milk, one can of lobsters, seven boxes of sardines, thirteen boxes of ham and tongue, two bars of soap, one can of sausage and two boxes of mustard sardines, the property of said Block. The evidence established that Block had and kept such articles in his store, but it fails to establish to a reasonable certainty that any such were ever stolen therefrom either by the accused or any one else. Block testified on the subject as follows: "I cannot say that I lost the goods mentioned in the indictment. I never missed nor searched for them, nor tried to find out if I had lost them. I run a large wholesale grocery, employ about 125 hands and sell generally to the retail trade in Atlanta and elsewhere." Catlett testified: "I work for Block in this city and county. The first of last year we missed from Block's store a cheese, and Mr. Parks, another employee of Block's, and I with an officer went to search the house of our driver whom we suspected of taking it. We didn't find it, and went to defendant's house in this city, who was not at home. His wife readily agreed to aid us, although we did not tell her what we were searching for. We did not find the cheese; but in the closet, the door of which his wife opened for us, on the top of the shelf, behind a board which was nailed to the front of the shelf so as to hold

what was put on the shelf, we found a lot of canned goods, consisting of one can of condensed milk, Vienna sausage, two boxes of mustard sardines, Kennesaw oysters, etc. I believed the goods to be stolen, especially the Vienna sausage, and took them away in a gunny sack. They filled the sack about one foot high. The defendant had worked for Block in the store about one year, and had access at all times to this kind of goods. When we first went to defendant's house and told his wife we wanted to search it, she excitedly threw her keys on the floor before us. We told her that, as we had to go through a woman's fixings, a woman was best to guide us. She then took the keys and unlocked the door for us. I identified the goods found in Block's. The goods we found at Henry Johnson's consisted of 1 can of oysters, 1 can of milk, 1 can of lobsters, 7 boxes sardines, 13 boxes of ham and tongue, 2 boxes of soap, 1 can of sausage and 2 boxes of mustard sardines." It will be observed that Mr. Catlett does not testify that anything had been missed from the store except a cheese, and that had not been found. So far as appears, the stock of Mr. Block was intact as to all classes of goods found in Johnson's possession. If the stock had been short of these articles, the fair presumption is that Mr. Block or some of his numerous employees would either have known of it or could have ascertained it. There is no suggestion in the evidence that the articles were short, or that there were no means of ascertaining whether they were so or not. It is not said that Mr. Block kept no books, or that he was otherwise deficient in the usual resources of merchants for determining the kind and quantity of all goods in store. It seems highly improbable that such a number of articles could be abstracted from a single stock of goods without some of them being missed. It does not appear that a single one of them was missed either

before or after they were found in Johnson's possession. Mr. Catlett testifies that he "identified the goods found in Block's." Possibly he means that he identified them as Block's goods. But this could signify no more than that they were such goods as Block had kept in stock. Block himself testified, however, that he ran a large wholesale grocery and sold generally to the retail trade in Atlanta and elsewhere. Several of the retail dealers in Atlanta, one of whom was Mr. Karwisch, testified on behalf of the accused that he, the accused, had traded with them for a length of time, and that they had sold him similar goods to most of those found in his possession. · The accused proved by two witnesses, moreover, that he was a man of excellent character, and there was no evidence to the contrary. Taking all the testimony together, we think it wholly fails to establish any *corpus delicti*. There is no certainty whatever that any of the goods traced to Johnson were stolen. The probability that Block had sold them to retail dealers before they reached Johnson, is decidedly stronger than that they were stolen by any one from his stock.

2. As to the alleged confession, we think that cannot be relied upon to supply the want of evidence as to the *corpus delicti*. "A confession alone, uncorroborated by other evidence, will not justify a conviction." Code, §3792. The wisdom of this provision of the law is well vindicated by the present case. Couch, the officer who arrested Johnson, testified that "At the station-house he confessed to Mr. Block that he stole the goods." Mr. Block, however, testified on that subject as follows : "In one conversation he twice admitted taking the goods, but immediately after stated that he bought them from Mr. Henry Karwisch. . . I cannot say positively that he said he stole the goods, or that he merely took them. I suspected somebody else had been implicated with him, and asked him who helped

him take them. He twice replied that he did it himself, and afterwards added that he bought them from Karwisch." It thus appears that what was to Couch a confession of stealing the goods, was to Block a very doubtful confession and coupled with an assertion that he bought them from Karwisch. It is not improbable that both these witnesses misunderstood the real import of his statement. At all events there is too much uncertainty about it for it to serve as a confession to make out the *corpus delicti*. Let the State first prove that Mr. Block's goods were stolen, and then it will be in order to connect Johnson with the larceny by this so-called confession, in so far as the jury may believe it correctly understood and reported. As the case comes to us in the record, there is altogether too much uncertainty as to whether any offence was committed. The good character of the accused should count for much in such a case; and we think the trial court erred in not granting a new trial.    *Judgment reversed.*