## BRAZIL *v.* THE STATE (two cases).

1. A check purporting to have been drawn upon a chartered bank of this State by the person whose name is signed thereto, and made payable to the order of a designated individual, has apparent "legal efficacy," though it be indorsed, not in the name of the payee, but in that of another person. Accordingly, an indictment charging the forgery and felonious uttering of such a check is not open to general demurrer; nor, in view of the system of code pleading which obtains in this State, is such an indictment fatally defective in that it fails to allege an intent on the part of the accused to defraud a particular person.

2. Where under a penal statute an offense may be committed by the doing of any one of several forbidden acts, a conviction may be had upon an indictment which in a single count charges the accused with the commission of two or more of them, if there be satisfactory proof that he committed at least one of the acts therein specified.

3. Proof that the accused is a person who has borne a good character is to be considered by the jury, not by itself alone, "outside of the other evidence in the case," but in connection with all other pertinent evidence tending to establish his guilt or innocence.

Argued January 19, — Decided February 7, 1903.

Indictment for forgery.  Before Judge Felton.  Bibb superior court.  November term, 1902.

*John R. Cooper*, for plaintiff in error.
*William Brunson, solicitor-general*, contra.

FISH, J.  The accused, Emmett Brazil, was brought to trial on an indictment containing two counts, one charging him with the offense of forgery, and the other charging that he did "falsely and fraudulently pass, pay, and tender in payment to H. Kessler," the paper alleged to have been forged by him. This paper was characterized as a check, drawn in the following form: "Macon, Ga., July 30th, 1902. No.—— The Exchange Bank of Macon Pay to the order of Frank Brazill $10.00 Ten Dollars. F. B. Chambers." On the back of the instrument was the indorsement: "Emmett Brazill." The indictment was demurred to by the accused, on the general ground that it did not set forth any offense under the

laws of this State; and also upon the special grounds, (1) that no attempt to defraud any particular person was alleged; and (2) "because said bill of indictment does not allege that the check [was] endorsed by Frank Braziel, but charges the same to be endorsed by a different person to wit: Emmett Braziel." The demurrer was overruled, and the accused sued out a bill of exceptions in which he complained of this ruling. A trial was had on the merits and resulted in a verdict of guilty, the jury returning a finding that the accused had committed the offense charged in the second count in the indictment. He made a motion for a new trial, but it was overruled; and he thereupon sued out another bill of exceptions, in which he assigned error upon the action taken by the trial court with respect to this motion.

1. At common law, no instrument which would not, if genuine, be of some "legal efficacy" was the subject-matter of forgery. Clark's Cr. Law (2d ed.), 338-340; Hughes' Cr. Law & proc. § 909; 2 Bish. New Cr. Law, § 533. In other words: "An instrument which is void on its face is not, as a general rule, the subject of forgery, because it has not the capacity of effecting fraud." 13 Am. & Eng. Enc. L. 1093-1094. That this is true has several times been recognized by this court. *Williams* v. *State*, 51 *Ga.* 535; *Wilcoxson* v. *State*, 60 *Ga.* 184; *Allgood* v. *State*, 87 *Ga.* 668. For a full discussion on the subject, and for instances showing the application of the rule which obtained at common law, see the following carefully considered cases: Wall's case, 2 East, P. C. 953; Mofatt's case, Id. 954; Hawkeswood's case, Id. 955; Commonwealth v. Ray, 3 Gray, 441; State v. Smith, 8 Yerg. 149; People v. Galloway, 17 Wend. 540; People v. Harrison, 8 Barb. 560; Butler v. Commonwealth, 12 Serg. & R. 237; Commonwealth v. Hinds, 101 Mass. 209; State v. Covington, 94 N. C. 913; State v. Dunn, 23 Ore. 562; Rembert v. State, 53 Ala. 467; Thompson v. State, 9 Ohio St. 354; Rollins v. State, 22 Tex. App. 548; State v. Johnson, 26 Iowa, 407; State v. Hilton, 35 Kans. 338; Terry v. Commonwealth, 87 Va. 672; Gutchins v. People, 21 Ill. 642; In re Benson, 34 Fed. Rep. 649; Raymond v. People, 2 Colo. App. 329; Cunningham v. People, 4 Hun, 455; People v. Drayton, 168 N. Y. 10; State v. Briggs, 34 Vt. 501; Reed v. State, 28 Ind. 396; State v. Anderson, 30 La. Ann. 557; Roode v. State, 5 Neb. 174; Cox v. State, 66 Miss. 14; People v. Shall, 9 Cow. 778; State v.

Jones, 1 Bay (S. C.), 207; Nelson *v.* State, 82 Ala. 44.   Our statute (Penal Code, § 237) provides a punishment for the forgery of " any check or draft upon any bank of this State."   An instrument in the form of a check, payable "to the order of . . . . " (no payee being named), does not come within the operation of the statute, since, as was remarked by Warner, C. J., in *Williams* v. *State*, 51 *Ga.* 536, such an instrument, even if genuine, would be fatally " incomplete as a bank check, and could not have defrauded the bank or the drawer of the check."

The paper alleged to have been forged by the accused in the present case can, however, properly be regarded as falling squarely within the descriptive terms used in our statute ; for, if genuine, F. B. Chambers would certainly be liable thereon, as maker; and being a forgery, the bank would sustain loss if it was misled thereby into paying to the person therein named as the payee the amount of money for which it called.   The fact that it was indorsed in the name of " Emmett Brazill " did not essentially change its character or convert it into something differing from a forged check.   For a person other than the payee of a negotiable instrument to indorse it merely evidences an undertaking on the part of such person to become liable thereon as an indorser or guarantor.   Norton on Bills and Notes, 113; *Collins* v. *Everett,* 4 *Ga.* 266 ; *Camp* v. *Simmons,* 62 *Ga.* 73 ; *Neal* v. *Wilson,* 79 *Ga.* 736 ; *Sibley* v. *Bank,* 97 *Ga.* 127.   A check on a bank is, in legal effect, neither more nor less than an inland bill of exchange.   1 Randolph, Com. P.(2d ed.) § 8.   So, it will be perceived, though a check may be made payable to the order of a designated person, an indorsement thereon by one other than the payee or his indorsee does not operate to detract from its " legal efficacy," but, on the contrary, gives to it an apparent additional force and effect.   That such a check is not also indorsed by the payee simply effects its negotiability.   Indeed, while his indorsement is essential to the passing of the legal title thereto, another may become the equitable owner thereof by mere delivery, without such indorsement.   2 Rand. Com. Paper (2d ed.), § 787; *Haug* v. *Riley,* 101 *Ga.* 375, and authorities cited.   In this connection, the decision announced in People *v.* Wheeler, 47 Hun, 484, may be referred to as directly in point.   In that case the accused, Wheeler, was charged with forging and fraudulently uttering a draft drawn upon a bank, payable one year after date to

his order, and purporting to have been given by Norman Coons and indorsed by Chester A. Miller. The accused contended that as " Miller was not the payee of the bill, and the indictment did not allege that the bill had been indorsed by the payee, it could not bind or injure Miller, whom the indictment charged that the defendant intended to defraud." But the court held that this contention " could not be sustained, as Coons would, if the instrument were genuine, on non-payment thereof and notice given to him, be liable like an indorser of a note, and Miller too would be liable as an indorser after Coons, and would be so liable to Wheeler or to his transferee." In other words, it was distinctly held that the paper under consideration purported to have " legal efficacy," and therefore did not come within the operation of the rule " that the forgery of an instrument which, if genuine, would be void, is not a crime." Such has been the test applied by this court in a number of cases wherein the question arose whether or not a particular writing was properly to be regarded the subject-matter of an indictment for forgery. See *Mitchell* v. *State*, 56 *Ga.* 171; *Berrisford* v. *State*, 66 *Ga.* 53; *Travis* v. *State*, 83 *Ga.* 372; *Billups* v. *State*, 88 *Ga.* 27.

It can not, of course, logically be said to be an indictable offense to utter an instrument which, if genuine, could have no legal capacity to injure, and which, for that reason, does not come within that class of writings to which a statute against forgery is intended to apply. 13 Am. & Eng. Enc. L. (2d ed.) 1102; 2 Bish. New Cr. L. § 605. But to utter any writing which was the subject-matter of forgery was, Mr. Bishop says, " at the common law a substantive crime." He further remarks : " Since the offense of uttering is an attempt " to cheat by means of such an instrument, ".it is complete when the forged instrument is offered ; an acceptance of it is unnecessary, while yet it does not take away or diminish the crime." That is to say, the guilty intent which accompanies such an attempt to defraud is the gravamen of the offense, and is punishable whether the attempt proves successful or not. Hence, one fraudulently uttering a forged instrument capable of working legal injury can not escape punishment for his felonious intent merely because, through ignorance or stupidity, he undertook to make a use of such instrument not calculated to deceive a person familiar with the law; but which, as matter of fact, accomplished his purpose. See, for an instance in point, the case of Smith *v.* State, 20

Neb. 284. The use made of the writing is, of course, to be taken into consideration, but only with a view of determining the intent of the person, as evidenced by his conduct. Our Penal Code (§ 239) expressly provides that the offense of uttering any of the class of instruments therein mentioned shall be deemed to have been committed if "any person shall falsely and fraudulently pass, pay, or tender in payment, utter or publish" any forged writing of the kind specified, "knowing the same to have been falsely and fraudulently forged." And this court has explicitly ruled that it is not necessary to allege, in an indictment framed under the section of the code just cited, "an intent to defraud any particular person." *Dukes* v. *State*, 94 *Ga.* 393. In holding, as we do, that to fraudulently and knowingly utter a forged instrument such as that described in the indictment before us constitutes an indictable offense, we have not overlooked the case of *Townsend* v. *State*, 92 *Ga.* 732, wherein it was ruled that : "Although a check upon a bank is in many respects a bill of exchange, yet as the Penal Code distinguishes between them, in that, while rendering the forgery of either an offense, it does not provide for the case of drawing a check in a fictitious name, but does provide for the execution of a bill of exchange in a fictitious name, it can not be held that a check upon a bank is a bill of exchange within the true meaning and intent of section" 245 of our present Penal Code. In other words, our penal laws fail to provide a punishment for uttering a bank check drawn in a fictitious name. This is not, however, true as to a bank check to which the signature of a person actually in existence has been forged ; for the Penal Code, § 239, in conformity to which the present indictment was framed, in terms provides that the fraudulent uttering of such a " check or draft, . . knowing the same to have been falsely and fraudulently forged," shall be punished by imprisonment and labor in the penitentiary for not less than two years nor longer than ten years.

2. In the motion for a new trial complaint was made of the charge of the court with respect to what proof was necessary to authorize a conviction of forgery. Since the practical effect of the verdict against the accused was to acquit him of the charge of forgery, it would be wholly unprofitable for us to deal more specifically with this complaint. It was shown conclusively that the check described in the indictment was a forgery, and there was

evidence to warrant the conclusion that the accused, if not himself the forger of it, had a guilty knowledge that it was not genuine. He certainly undertook to pass it, having tendered it to Kessler, a storekeeper, in payment for a pair of pants which he desired to purchase, and which Kessler desired to sell. The latter did not part with the possession of the clothing, being convinced, upon an examination of the check, that Chambers had not drawn it. Accordingly, it is contended by counsel for the accused that the evidence did not make out the charge laid in the indictment, wherein it was alleged, not only that the check had been tendered in payment, but successfully passed. This contention was not meritorious. See *Eaves* v. *State*, 113 *Ga.* 757, and authorities cited. There was, it is true, as pointed out by counsel, no evidence that the accused himself indorsed the check. But certainly the verdict should not have been set aside for this reason. The accused was not charged with writing his name on the back of the check, nor convicted of signing Chambers' name thereto, which he most probably did. The instructions given to the jury with reference to the law bearing on the offense charged in the second count of the indictment were full, fair, and free from error; and we doubt not that the jury correctly found that the accused was at least guilty of that offense.

3. He made no statement in his own behalf, but relied for an acquittal solely upon the testimony of witnesses introduced by the State, which was brought out on cross-examination, to the effect that, prior to his unfortunate intimate connection with the forged check, he had borne a good character. As to this solitary line of defense the trial judge charged the jury as follows: "Evidence is introduced as to the character of defendant. Good character, when proven to your satisfaction to exist, is a substantive fact which it is your duty to consider, together with all evidence in the case, giving it such weight as you think it is entitled to in the case. If you believe, however, the evidence in the case shows the guilt of the defendant beyond a reasonable doubt, you would be authorized to convict the defendant, notwithstanding the proof of good character." This charge was not, as insisted by counsel for the plaintiff in error, erroneous in that the jury were instructed "to consider the good character along with the other evidence in the case," instead of being told they "had authority to consider good charac-

ter outside of the other evidence in the case," as proof of good character may of itself alone be "sufficient to generate a doubt" of a defendant's guilt. Good character affords no valid excuse for committing a crime. *Hathcock* v. *State*, 88 *Ga.* 92. Accordingly, proof of good character is not properly to be considered by itself alone, "outside of the other evidence in the case," but "along with the other evidence in the case," to the end that the jury may determine whether such proof really outweighs "the other evidence," or creates a reasonable doubt as to the guilt of the accused, despite such evidence. *Seymour* v. *State*, 102 *Ga.* 803. From the standpoint of the accused, the real fault in the charge as given was that it was not sufficiently inaccurate and misleading to shield him from the consequences incident to a verdict of guilty.

*Judgment in each case affirmed. By five Justices.*