# SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

## June 7, 1918.

## THE PEOPLE v. RAPHAEL ALLOCCA.

### (183 App. Div. 571.)

(1.) MURDER—EVIDENCE NOT JUSTIFYING CONVICTION.

Appeal from a judgment convicting the defendant of the crime of murder in the second degree. The verdict was based chiefly upon the testimony of a woman of wayward life who had twice been convicted of perjury, and upon testimony of a man who had served terms for extortion and robbery. Defendant proved an alibi by several witnesses. Evidence examined, and *held,* that the judgment of conviction should be reversed and a new trial ordered.

(2.) SAME—ALIBI.

The burden of proof as to the alibi was not upon the defendant.

(3.) SAME—REASONABLE DOUBT AS TO PRESENCE OF DEFENDANT AT PLACE OF CRIME.

If the proof as to the alibi in connection with all of the other proof raised a reasonable doubt as to the presence of the defendant at the place of the crime, he was entitled to an acquittal.

(4.) SAME—RIGHT TO SPEEDY TRIAL.

Where the crime was committed in 1907, and the defendant was not indicted until 1911 and not tried until 1913, he is entitled to speedy justice by a prompt retrial, or by other disposition of the case.

APPEAL by the defendant, Raphael Allocca, from a judgment of the County Court of Queens county, entered in the office of the clerk of said county on the 7th day of December, 1913, convicting him of the crime of murder in the second degree.

*Stanley C. Fowler* (*Roscoe C. Peck* with him on the brief), for the appellant.

*Denis O'Leary, District Attorney,* for the respondent.

JENKS, P. J.:

The proof justified a finding that on the evening of Sunday, September 8, 1907, Joseri was killed by a pistol shot as he was leaving the house kept by the woman Marietta, and that he had been last with a number of persons in the dram shop in that house. But the proof did not justify any finding that defendant fired the shot or was privy to the killing.

The defendant, a young man about 20 years old, worked in the barber shop of his older brother, about a mile distant. It does not appear that he knew Joseri. If the story of the cause of the quarrel is credited, the defendant, a visitor in the dram shop, thrust himself into the quarrel between Joseri and some one in authority in that shop, and then shot Joseri after Joseri had thrown a beer glass at him without harm, and had started to leave the premises. The witnesses who testify directly to the act by the defendant are but two. One was a woman admittedly of wayward life, who had twice been convicted and had served terms for perjury. The other was a man who had been convicted and served terms for extortion and for robbery and who had been brought from prison to testify.

The law no longer excludes such persons from the witness box. Perhaps for the reason " the punishment does not fall upon the witness who is disqualified, but upon all persons who may have need of his evidence." (9 Benth. Rat. Jud. Ev. pt. 3, chap. 3, quoted in 1 Wigm. Ev. 649, 650. See, too, Real v. People, 42 N. Y. 281.) But the reason that once worked exclusion necessarily still exists and is applied, both in our said statute of qualification and in the judgment of the courts,

by the rule that the trier of fact should weigh the testimony of such a person in connection with his character and his past conduct. (Spiegel v. Hays, 118 N. Y. 660, 661, and cases cited.) Naturally, a judgment for the crime of perjury has greater weight against the credibility of a witness than any other crime, for the witness has been adjudged guilty of a crime which, if repeated in the instant case, makes his deliverance worthless or even worse. In the case at bar the testimony of this perjurer of the past is much weakened by **her testimony** to motive. After admission that her testimony was given to accord with an affidavit bearing on this case, made long before, when she had been arrested for perjury and was waiting trial, she testifies that she made that affidavit because " of what the brother [of the defendant] done to me "— the brother Tony, with whom she once lived in meretricious relations and whom she had supported by prostitution, but who had left her sometime before this killing of Joseri. She testifies and she reiterates in so many words that she had made the affidavit " to spite Tony."

The other eye-witness reveals himself, not by his character alone, but by his deliverance, as one worthy of little credence, one who would testify regardless of the truth if his self-interest would be served. A third witness testifies that the defendant was present and participated in the altercation, but the witness ran outside, and thereafter heard a shot; he did not see the shooting, and finally admitted that he could not identify the defendant.

After the defendant had put in his defense, which included an *alibi,* the People called a witness who testified that he saw the defendant enter this dram shop at 4 or 5 o'clock of that day. The crime was committed in 1907, the defendant was not indicted until 1911 and was not tried until 1913. We read that this witness testifies in 1913 to this fact of 1907 because a man named Cutlo told the witness in 1910 that the defendant

" was there." And this witness admits that he had some trouble with the defendant's people. Another witness testifies in 1913 that when he was a boy at play in the streets in 1907, on the 8th of September in the afternoon, he heard a shot and saw the defendant running by.

The defendant testified in absolute denial of any relation to the killing. The defendant called six witnesses, apparently respectable men of business, who had known the defendant for considerable periods of time, of whom all gave postive testimony to his good character and some spoke of his peacefulness. Nothing was proven against his character or his quiet peacefulness. Good character is a substantial fact. (Hanney v. Commonwealth, 116 Penn. St. 322, 327; Brazil v. State, 117 Ga. 32.) It may be sufficient to raise a reasonable doubt in favor of a defendant. (People v. Elliott, 163 N. Y. 11, 14; People v. Conrow, 200 id 356; Whart. Crim. Ev. [10th ed.] § 67.)

The keeper of the bar in the dram shop testifies that the defendant was not in that place at any time during that day. He testifies that neither of the eye-witnesses of the crime called by the People were there. It is true that his testimony must be considered with the fact that he was the husband of the defendant's sister.

The defendant testifies that, as was his custom on Sundays, he went to the house of a woman (whom he afterwards married) about 3 or 3:30 p. m., and stayed with her and her sister until 10:30 p. m. Both the woman and the woman's sister corroborated this statement, and withstood the long and severe cross-examination of the counsel for the People. It was not incredible that these witnesses could recall the day, if their testimony is believed that the killing of Joseri was a matter of their knowledge and the topic of their discussion on the morning after that Sunday and that they knew of some of the persons related to the affair. The burden of proof as to the alibi was not upon the defendant. If the proof as to the alibi

in connection with all of the other proof raised a reasonable doubt as to the presence of the defendant at the place of the crime, the defendant was entitled to an acquittal. (4 Wigm. Ev. § 2512; Chamberlayne Mod. Law of Ev. § 973; Whart. Crim. Ev. [10th ed.] 674; 1 Greenl. Ev. [15th ed.] § 81, note; 12 Cyc. 619, citing many authorities. See, too, People v. Stone, 117 N. Y. 480, 7 N. Y. Crim. 430.)

There is a feature of this case mysterious to a degree, that incidentally makes for the defendant. The crime was committed in September, 1907. The defendant was not indicted until 1911. He was not tried until December, 1913. Throughout the period that intervened 1907 and 1911, the evidence indicates that he remained in the neighborhood of the crime and went about his business from day to day. A man guilty of murder, without ties of wife or child at the time, is not likely thus to demean himself. If flight is a confession of guilt, then its opposite may indicate an assertion of innocence, when the crime was not secret, but was committed in the presence of several witnesses.

No reflection is cast upon the present district attorney; none is intended against any of his predecessors; but the fact remains that there has been an abnormal delay in this case. It is suggested that the attorney see that speedy justice be done, either by a prompt trial, or by some other disposition of the case, for it is certain that the defendant should no longer suffer the consequences of the trial now under review.

The judgment of conviction of the County Court of Queens county is reversed, and a new trial is ordered.

THOMAS, MILLS, PUTNAM and BLACKMAR, JJ., concurred.

Judgment of conviction of the County Court of Queens county reversed, and new trial ordered.