THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* NICHOLAS MONTANA, Defendant.

Supreme Court, New York County, February 1, 1928.

Crimes — certificate of reasonable doubt — defendant was convicted of grand larceny for theft of automobile — indictment tried in New York county from which automobile was taken into Westchester county — proof showing defendant's connection with crime in Westchester county, sufficient for conviction — jury disbelieved defendant's alibi — application for certificate denied.

Defendant, who was convicted in New York county of grand larceny for the theft of an automobile, is not entitled to a certificate of reasonable doubt on the ground that there was no evidence that the crime was committed in New York county and that all the proof adduced relating to defendant's crime concerned incidents in Westchester county, since an accused charged with a crime of this nature can properly be tried either in the county where the property was feloniously taken or in any county into which it was carried.

The fact that the jury disbelieved defendant's alibi, that he was in downtown New York at the time when he was said to have been at a garage in Westchester county, is no good reason, under the evidence, why the application for a certificate should be granted.

MOTION by defendant for a certificate of reasonable doubt.

*Joab H. Banton, District Attorney [Michael J. Driscoll, Deputy Assistant District Attorney, of counsel], for the plaintiff.*

*James E. Smith, for the defendant.*

LEVY, J. The defendant, indicted in New York county and found guilty of grand larceny, applies for a certificate of reasonable doubt. The motor car which he was convicted of stealing was taken in that county. The evidence indicates that it was stored by the defendant in a garage in Westchester county, and that he called for it two or three days later when he was there apprehended. He denied having stored the car, and testified that one Wilson sent him to Yonkers merely to look it over with a view of purchasing it. Wilson, whose identity may be said to be clouded in doubt, did not appear to testify. No exceptions were taken to the judge's charge, and upon this application there are but two objections urged which may be seriously considered.

The first is that there is no evidence that the larceny was committed by the defendant in the county of New York where the indictment was laid, all the proof adduced relating to the prisoner's connection with incidents occurring in Westchester county. It is certainly well settled by this time that an accused charged with a crime of this nature could properly be tried either in the county where the property was feloniously taken or in any one into which it was wickedly carried. (*People* v. *Spivak*, 237 N. Y. 460; *Haskins* v. *People*, 16 id. 344.) Obviously, therefore, the point made in this connection is wholly untenable.

The second objection is that the prisoner established an alibi by showing that he had been in an attorney's office in the lower end of New York city the entire afternoon of the day upon which it is alleged the larceny was committed; that as a result, if he was present in that office until after six o'clock, indeed he could not have been in Yonkers at five-thirty o'clock when it is said the car was stored, as testified by the garage man. True it is that the burden of proof as to the alibi was not upon the defendant. (*People* v. *Allocca*, 183 App. Div. 571; *People* v. *Montlake*, 184 id. 578.) It is equally true that if the proof as to the alibi when taken into consideration with all the other evidence raises a reasonable doubt as to the guilt of the defendant, he becomes entitled to an acquittal. (*People* v. *Stone*, 117 N. Y. 480.) But as to this defense it was held a long time ago — and it must be considered sound doctrine still — in *People* v. *Kelly* (35 Hun, 295) by the General Term of the then Fifth Department, Mr. Justice HAIGHT writing for a unanimous court, as follows: " It is but natural that a person who has committed a crime should seek to get away from the scenes of his crime and to avoid detection. It is undoubtedly true that the defense is often resorted to, and at times attempted to be sustained by *false* and *perjured* testimony. The testimony given to establish the defense may or may not be suspicious, depending largely upon the circumstances and the character of the witnesses giving it. *It is proper for the jury to scan with care the testimony given, for the purpose of determining whether it is true or false,*   \*   \*   \*.*" (Italics mine.)

Here, the jury evidently did not take the alibi seriously, not perhaps because they necessarily disbelieved the attorney and his employee. They may well have entertained the view that these witnesses testifying from mere memory without the aid of records were probably in error as to the date or as to the hour of the day. But aside from this, the defendant himself seemingly foreclosed the jury from believing this defense by the palpable falsehoods in which he indulged and also from what appears to be a clear and convincing case as presented by the prosecution.

17

It is exceedingly difficult to draw any conclusion other than that the finding of the jury was just. It is indeed significant that it required but fifteen minutes to arrive at the verdict. The result is well justified by the utterance of the Court of Appeals in *Knickerbocker* v. *People* (43 N. Y. 177, 179): " We think it well settled law, that the exclusive possession of the whole or some part of stolen property by the prisoner, recently after the theft, is sufficient when standing alone to cast upon him the burden of explaining how he came by it, or of giving some explanation; and if he fail to do so, to warrant the jury in convicting him of the larceny." In this connection see, also, *People* v. *Weldon* (111 N. Y. 569).

Defendant had what is tantamount virtually to the exclusive possession of the subject of the larceny. He unsuccessfully attempted to shield himself by showing that he acted as the innocent agent of Wilson, whom the jury were well warranted in believing a mythological being, as another jury in the criminal branch of this very court some few years ago in the conviction of one theretofore recognized as a world famed reformer, similarly concluded that a celebrated " Mr. King " was a character in Norse mythology. This rather speaks eloquently for the intelligence of our talesmen.

The application is denied.