## 38216. MOBLEY *v.* THE STATE.

DECIDED MARCH 18, 1960.

*William H. Burke,* for plaintiff in error.
*Luther C. Hames, Jr., Solicitor-General,* contra.

TOWNSEND, Judge. ■ As to the general grounds of the motion for new trial and the motion for a judgment notwithstanding the verdict, there was sufficient evidence to authorize a conviction. The defendant presented to a filling station proprietor the check in question, signed with the name "Hubert Hulsey," who cashed the check and on presentation at the bank for payment discovered that there was no account in such name. The defendant endorsed the check with his correct name, "C. L.

Mobley" and also placed his thumb print on the back of the check at the proprietor's request. After his arrest he admitted, first orally and then in a signed statement, that he had obtained a blank check, signed the name "Hubert Hulsey" to it and cashed it. There was also testimony by a member of the Georgia Bureau of Investigation that he had made a search for a Hubert Hulsey and had located no such person. To authorize conviction, the confession must be supported by aliunde evidence of the corpus delicti—that is, proof that the check in question was forged by someone. In looking to such proof, we do not follow that part of *Logue* v. *State*, 198 *Ga.* 672 (32 S. E. 2d 397) which says that "the confession itself may legally and properly be considered as a part of the proof of the corpus delicti," first, because to do so is in contravention of Code § 38-420 which holds that the confession must be corroborated by *other evidence*, and, second, because it appears to this court that the statement is in direct conflict with the older case of *Johnson* v. *State*, 86 *Ga.* 90, 93 (13 S. E. 282) which states: "As to the alleged confession, we think that cannot be relied upon to supply the want of evidence as to the corpus delicti." If the confession must be corroborated by other evidence, such as the proof of the corpus delicti (see *Daniel* v. *State*, 63 *Ga.* 339), and yet to prove the corpus delicti one may look to the confession, the rule has been in effect destroyed. It is the duty of this court to follow the oldest Supreme Court case in the event of conflict, and we therefore look to the evidence here to decide whether every element of the corpus delicti has been proved independently of the confession sufficiently to constitute proof of this fact as a corroboration of the confession.

It was established that there was no account in Austell Bank in the name of Hubert Hulsey, and it was established that there had been a search to determine the identity of Hulsey and no such person had been found. "Evidence that a person whose name purports to be signed to an instrument is not known in the community, that a search made in an attempt to locate such person has been unsuccessful, that such person, if the instrument is a check, has no account or arrangement for credit in the drawee bank, or that the name of such person does not appear in the

city or county directory or on the tax rolls, is properly admissible as tending to establish that such person is in fact fictitious. . . As to the sufficiency of the evidence to establish that a check is fictitious or that the purported maker does not exist, numerous cases hold that the testimony of a proper officer of the drawee bank that such person has no account in the bank is prima facie evidence that such check is fictitious or that such person is nonexistent." 49 A. L. R. 2d, Anno., 852, 855 and citations. Where a check is forged by use of the name of a person in existence as the maker thereof, testimony that such person did not in fact sign the check is of course evidence that the check is a counterfeit. Where the name of the purported maker is fictitious, the State may prove a forgery by proving that the defendant did in fact write or was concerned in falsely writing the check, either by direct evidence, by proof of handwriting, or in some other way. The attempt to prove handwriting here failed for the reason that the witness refused to testify as to whether the defendant had written the words appearing on the face of the check, and her testimony that the defendant's own name endorsed on the back was written by him of course did not prove any forgery. Evidence that no such person as the purported writer of the check is in existence in the neighborhood where the transaction took place will also establish that the check is false or counterfeit, and the evidence to that effect has been set forth above. While it was very slight, there was no objection to that admitted on the ground that it was a conclusion, and no cross-examination to establish what investigation had in fact been made to determine the nonexistence of the alleged maker, and no issue is made in the briefs of counsel on this point. His possession and his utterance showed him to be concerned therein. We hold under the circumstances that the evidence was sufficient prima facie, and in the absence of any indication to the contrary, to establish that the check, being in the name of a fictitious maker, was a false or counterfeit check so as to prove the corpus delicti and thus constitute sufficient corroboration of the confession. The motion for a judgment notwithstanding the verdict, and for a new trial on the general grounds, are without merit.

In arriving at this conclusion we are aware that there is some confusion in our decided cases as to whether the signing of a fictitious name to a check by one who falsely makes and utters such check can constitute forgery. Code § 26-3908 provides: "Any person who shall falsely and fraudulently make, sign, or print, or be concerned in the false and fraudulent making, signing, or printing of any check or draft upon any bank of this State, or bank as aforesaid, or falsely or fraudulently procure the same to be done, shall be punished by imprisonment and labor in the penitentiary for not less than three years nor more than seven years." Code § 26-3910 provides: "Any person who shall falsely and fraudulently pass, pay or tender in payment, utter or publish any false, forged, counterfeit, or altered note, bill, check, or draft as aforesaid, knowing the same to have been falsely and fraudulently forged, counterfeited, or altered, shall be punished by imprisonment and labor in the penitentiary for not less than two years nor more than 10 years." Code § 26-3916 makes it a felony to make or draw a bill or note in a fictitious name and does not refer to intent to defraud as an element of the crime, and it was held in *Townsend* v. *State*, 92 *Ga.* 732 (19 S. E. 55) that as checks were not included in this Code section an indictment could not be drawn under it charging as a crime the making of a check in a fictitious name. In *Brazil* v. *State*, 117 *Ga.* 32, 36 (43 S. E. 460) it was stated that "our penal laws fail to provide a punishment for uttering a bank check drawn in a fictitious name," a statement in conflict with the plain wording of Code § 26-3908, and also contrary to the settled rule as to forgery generally both at common law and throughout the other States. See 49 A. L. R. 2d Anno., 852, supra; 23 Am. Jur. 681, Forgery, § 12; 37 C. J. S. 39, Forgery, § 10 and citations. While there are no crimes in Georgia except those made so by statute, we note this for the reason that the decision in the *Brazil* case is based largely upon an application of what the writer of that case construed the common law to be. The conviction there was affirmed and the statement above quoted was obviously obiter in that case. It was so held in Judge Russell's opinion in *Saffold* v. *State*, 11 *Ga. App.* 329 (75 S. E. 338) where it was necessary to a decision on the ruling on demurrer, and the ruling was

approved in *Saffold* v. *Mangum*, 139 *Ga.* 119 (76 S. E. 858), another case involving the same conviction. Likewise, the statement in *Grier* v. *State*, 64 *Ga. App.* 718 (13 S. E. 2d 909) to the effect that our forgery statutes fail to provide a punishment for drawing or uttering a bank check in a fictitious name, based on the *Brazil* case, is obiter, the conviction in the *Grier* case also having been affirmed, but in any event its meaning must be limited to Code § 26-3916 which deals specifically with the use of a fictitious name on a note or bill, and not extended so as to cover Code § 26-3908 referring to the forging of checks. That checks may be forged by the use of a fictitious name in Georgia, see *Curtis* v. *State*, 80 *Ga. App.* 244 (55 S. E. 2d 758), and *Moore* v. *Bank of Dahlonega*, 82 *Ga. App.* 142, 148 (60 S. E. 2d 507), where it is stated: "There may be a forgery by the use of a fictitious name as well as by the use of a person's own name, if the intent exists to commit a fraud by deception as to the identity of the person who uses the name." Therefore, while the use of a fictitious name as maker of a check does not of itself constitute a crime under Code § 26-3916, it may when the other elements of the crime are present constitute forgery under Code § 26-3908, uttering a forged check under § 26-3910, or possession of a forged check with intent to utter it under Code § 26-3911.

■ ■ The plea in abatement and special grounds 2 and 3 of the amended motion for new trial contend that the alleged former convictions of the defendant should not have been pleaded, that they were not proved, and that admitting documents in evidence pertaining to them was error in that it placed the defendant's character in issue. The indictment alleged three former felony convictions and was not subject to demurrer; however, when the documents in case No. 4836 were introduced in evidence they showed that although the defendant was convicted of hog stealing, a reducible felony, he was only sentenced to misdemeanor punishment. He was thus not "sentenced to confinement and labor in the penitentiary" under Code § 27-2511 so as to make this conviction relevant under the second-conviction rule prescribing maximum punishment under Code § 27-2511. The plea in abatement, as regards this indictment, was improperly overruled. Evidence of other criminal transactions which is

admitted under cover of a pleading not itself good, and an objection to which has been erroneously overruled, has no place in the trial and its admission is prejudicial to the defendant as tending to place his character in issue. *Hodges* v. *State,* 99 *Ga. App.* 295 (108 S. E. 2d 164). It was, therefore, error to overrule ground 3 of the motion for new trial, after erroneously overruling the plea in abatement as to this conviction.

Accusation No. 3336, is not absolutely void so as to be subject to the attack against it. The documents introduced in evidence reveal that the defendant was charged "with the offense of misdemeanor" in that he did, on a named date, forge a check on the Austell Bank; that he pleaded guilty to the accusation, and was sentenced to the penitentiary for a period of from two to three years. That record shows him to have been represented by counsel as required by Code § 27-704. There was no demurrer to the accusation, the defendant treated it as valid by pleading to it, he did not appeal the conviction and he presumably served the sentence. That the accusation was not perfect in form would be a ground for demurrer, but would not render the conviction void after judgment. *Saffold* v. *Mangum,* 139 *Ga.* 119, supra. Nor does it matter that the accusation referred to the crime as a misdemeanor, for it is the offense stated, and not the designation of it in the accusation, which determines its nature. *Curtis* v. *State,* 80 *Ga. App.* 244, supra.

As to the third conviction alleged in the indictment, no evidence at all was offered to support its existence. This issue should have been determined by the plea in abatement, and, if the conviction was not in fact legally sufficient to be relied on at the trial of the case it should have been stricken. Inasmuch as allegations of criminal convictions are prejudicial to the defendant, although proper where made in good faith under Code § 27-2511, in fairness to a defendant such allegations should not be made unless supported by evidence.

Movant objects in special ground 1 of the amended motion for new trial to substantially all of the testimony of the State's handwriting expert, and contends that its admission in evidence was error because "the jury was given to understand that scientific proof was being adduced before it going to the

ultimate question to be determined by said jury, whereas in fact the testimony of the expert witness did not shed any light upon the ultimate fact for the reason that her testimony concerned itself solely with the endorsement on the check that it was alleged the defendant forged, such endorsement was in the true name of this defendant, the testimony thus being completely irrelevant to the issues." While, as stated above, it is true that none of the testimony of this witness showed that the face of the check had been forged by the defendant, and while the defendant's signature on the endorsement could not be a forgery, being his own name, the testimony was nonetheless admissible since it tended to prove that the defendant was in fact the person who uttered the check. This ground was without merit.

█ As previously stated, this defendant was tried on an indictment in three counts charging forgery of a check, uttering a forged check, and possession of a forged check with intent to utter it. The crimes of forgery and uttering a forged check knowing it to have been forged are similar but not identical offenses for, as to the first, the defendant must have falsely made the paper or have been concerned therein or have procured it to be done. In the latter he may not have been concerned in making it or procuring it to be made, but he must have uttered, passed, or tendered it knowing it to have been forged. The statute (Code § 26-3910) as to uttering a forged check does not include being concerned in uttering, or procuring it to be uttered, but is directed toward the person who utters it, from which it follows that to commit the offense of uttering, it must appear that the check is forged, that the defendant knows it is forged, that he has it in his possession, and that he has the intention of uttering it. Thus, all of the elements of the offense of possessing with intent to utter under Code § 26-3911 are included in the offense of uttering under Code § 26-3910. (What is said here as to possession does not, of course, refer to cases where the element of conspiracy is involved.) In Curran v. Sanford, 145 F. 2d 229, it was held that the offense of passing a counterfeit silver half dollar, and the offense of possessing a counterfeit silver half dollar with intent to defraud were similar but not identical offenses under Federal Code provisions and thus authorized consecutive

punishments. Thus the Federal statutes differ in this respect from our State statutes.

In multi-count indictments such as that here, it is important to determine whether the counts refer to separate transactions or to the same transaction. In *Tooke* v. *State*, 4 *Ga. App.* 495, 503 (61 S. E. 917) it is stated: "Where the indictment relates to a sole transaction, and the pleader, not being certain as to the exact manner in which he shall be able to prove that the crime was committed, yet knowing that if he describes the offense with alternative or ambiguous allegations he renders the indictment subject to demurrer for duplicity, resorts to the fiction of charging that the defendant has committed a number of crimes, all in fact the same, yet varying in detail—that is, charges the same offense in different counts, as if it were a number of transactions—the court on the trial of the case, and the appellate tribunal on a review of it, largely disregard the fiction and look to the substance, and not the form of the charge. Hence if the defendant is convicted generally—that is to say on all of the counts —the court imposes but a single sentence; or (under the former practice in England and under the present practice in some of the States) meets fiction with fiction, and imposes several sentences, but makes them run concurrently. On the other hand, where the same indictment really charges a number of distinct and separate transactions, it becomes the duty of the trial court to conduct the case, and of the appellate court to review it, just as if it were a consolidation of separate indictments; and where the defendant was convicted generally—that is to say, on all of the counts—or specifically on more than one of them—it was the course at common law to sentence the defendant on each count; and these sentences might be cumulative. For some reason, it has not been the practice in this State to impose cumulative sentences, upon the different counts of an indictment charging distinct offenses; but we know of no reason why it may not be done; for as to these things we are supposed to follow the common law. Indeed, all through the course of our reports are to be found intimations that the power to impose more than one sentence in such a case exists."

In *Brannon* v. *State*, 21 *Ga. App.* 328 (2) (94 S. E. 259) it was

held: "Where a verdict of guilty is rendered on a number of counts, a sentence which does not exceed that which may legally be imposed on any one count is supported by the indictment, if any count is good." Examination of the record in that case reveals that the defendant was charged in four counts with uttering a forged check, each count referring to the same transaction.

In *Davis* v. *State*, 100 *Ga. App.* 308, 313 (111 S. E. 2d 116) the defendant was charged in two separate indictments with varying degrees of the same crime, there being a single criminal transaction, and at the conclusion of the State's evidence a motion was made to compel the State to elect upon which indictment it intended to proceed. The motion was refused, and the defendant was thereafter separately convicted under each indictment, and was sentenced to consecutive punishments. It was held that, "where what appears to be two separate congruous offenses are charged in separate counts of an indictment, or where there are separate indictments of this character which by agreement are consolidated for trial, and the evidence thereafter discloses that there is in fact but one offense, the charge becomes duplicitous." The offenses here are not the same, but a single transaction is involved and all of the elements of the offense of possessing the forged check with intent to utter it are included in the crime of uttering, so that only one punishment can be inflicted. The *Davis* case, after pointing out that it was error, on the joint trial of two indictments charging what amounted to a single offense, to refuse a timely motion to compel the State to elect on which indictment it would proceed, stated: "Even if the defendant had been tried on both indictments under the State's theory that two separate offenses were committed, the error would have been harmless if the court in his charge to the jury had informed them that the lesser offense was merged in the greater, or even if the court, after the verdicts of guilty were returned, had by the sentence punished the defendant only for one offense."

It may then be stated that where the defendant is on trial under a multi-count indictment, and from the testimony it appears that two or more counts, or two or more indictments, if he is on trial under several distinct indictments, charge but one crime, or

one single criminal transaction amounting to two or more crimes but as to which he may only be punished singly because all of the elements of one of the offenses are included and swallowed up in another of the offenses charged, the situation may be taken care of in various ways. A timely motion to elect upon which count the State desires to proceed may be made. The court in his charge to the jury may instruct them that two or more of the counts refer to but a single offense so that if the jury find the defendant guilty of the more comprehensive offense they will ignore the other offense included therein. If the jury finds a general verdict of guilty without specifying the counts on which it is predicated, and the verdict is authorized as to the more comprehensive offense, it will be considered as applying to it. Or, if none of these things occur, it is the duty of the trial court to so sentence the defendant that he will not be twice punished for the same criminal transaction. It is generally held that where the defendant has served the greatest of two or more sentences imposed in such a case his further detention is illegal. 15 Am. Jur. 116, Criminal Law, § 459; Bertsch v. Snook, 36 F. 2d 155. The trial court may, by stipulating that the sentences are to run concurrently, ensure that the defendant will not be subject to double punishment.

It follows that no harmful error is shown by special ground 5 of the amended motion for new trial, which contends that the court erred in charging the jury: "Now, if you find him guilty on all three [counts of the indictment] you set the sentence on all three," where the court did, in fact, by his sentence provide that service of sentence on the separate counts of the indictment was to be concurrent.

This court has passed upon all of the assignments of error in this case for the reason it is anticipated that the questions will recur upon another trial.

The trial court erred in overruling the plea in abatement as to certain of the accusations in the third count of the indictment, and in denying the motion for new trial as to certain of the special grounds. He did not err in denying the motion for a judgment notwithstanding the verdict.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*